**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **A.S.K. PLASTICS, INC., et al.,** | : | |
| | : | |
| Debtors. | : | **Bankruptcy No. 03-34574 KJC** |
| | : | **(Jointly Administered)** |
| | : | |
| | : | |
| **A.S.K. PLASTICS, INC., JAMISON** | : | |
| **PLASTIC CORP; 9800 ASHTON** | : | |
| **ROAD, L.P.; THE OFFICIAL** | : | |
| **COMMITTEE OF UNSECURED** | : | |
| **CREDITORS** | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **SUMMITBRIDGE NATIONAL** | : | |
| **INVESTMENTS LLC; TRIDENT** | : | |
| **CONSULTING GROUP** | : | |
| | : | |
| Defendants | : | **Adversary No. 04-511 KJC** |

# M E M O R A N D U M[1]

**BY:    KEVIN J. CAREY, UNITED STATES BANKRUPTCY JUDGE.**

On May 17, 2004, the Official Committee of Unsecured Creditors (the "Committee") and the Debtors[2] filed a complaint commencing this adversary proceeding against SummitBridge

---

[1] The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and § 157(a). With respect to the claims against Trident Consulting Group ("Trident"), Count V is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(H). Although Counts IX and X may not be core proceedings, I will not make a final determination on whether those counts are core or non-core until the parties have had an opportunity to address the issue, unless Trident consents to a final determination by this Court. *See* 11 U.S.C. §157(c).

[2] A.S.K. Plastics, Inc. ("ASK"), Jamison Plastics Corp. ("Jamison"), and 9800 Ashton Road, L.P. ("9800 Ashton Road") are collectively referred to as the "Debtors." By order dated May 21, 2004, I granted the Debtor's motion to substantively consolidate the Debtors' bankruptcy estates. The Debtors and the Committee are referred to jointly as the "Plaintiffs" herein.

National Investments, LLC ("SummitBridge) and Trident.[3]  The complaint included three claims for relief against Trident, as follows:

> Count V -   Avoidance of fraudulent transfers pursuant to Bankruptcy Code §§ 548 and 550 against Trident;
>
> Count IX -  Breach of contract claim against Trident;
>
> Count X -   Professional negligence claim against Trident.

Currently before me is Trident's motion to dismiss these claims.  For the reasons set forth in this Memorandum, Trident's motion to dismiss will be denied.

Factual Allegations.

The complaint includes the following allegations regarding the Debtors' relationship with Trident that are relevant to resolving this motion.[4]

The Debtors had various loan agreements with Fleet Bank ("Fleet"), that are described in more detail in paragraphs 19 through 24 of the Complaint.   In October 2002, after the Debtors experienced financial difficulties, Fleet referred the loans to its work-out department, at which time Fleet realized that it had failed to obtain a mortgage on real property owned by ASK and located at 9450 Ashton Road, Philadelphia, Pennsylvania (the "Ashton Road Property). (Complaint, ¶¶27-28).  The Plaintiffs allege that Fleet's agreement to forbear from taking any action against the Debtors after this time was part of a scheme to forbear only as long as necessary to perfect a mortgage on the Ashton Road Property. (Complaint, ¶29).

As part of the forbearance, Fleet requested that the Debtors hire a consultant to assist in

---

[3]SummitBridge was previously dismissed from this adversary proceeding with prejudice.

[4]The complaint contains other allegations that may be relevant to the Plaintiffs' claims against Trident.  This summary is not intended to be exhaustive.

restructuring the debt. (Complaint, ¶30). After the initial consultant hired by the Debtors did not prove effective, Fleet, as a condition to its continued discussions with the Debtors, demanded that the Debtors hire Trident. (*Id.*).

Initially, the Debtors retained Trident on an informal basis. (Complaint, ¶31). Although Trident was hired for the purpose of advising the Debtors' management regarding the restructuring the companies' debt, in actuality Trident served as Fleet's agent at the Debtors' facility. (*Id.*). Trident, in conjunction with Fleet, began to completely dominate the Debtors' business by controlling negotiations with creditors and preparing and submitting borrowing base certificates to Fleet. (Complaint, ¶32).

In Spring 2003, as part of the forbearance negotiations, Fleet demanded that the Debtors (i) authorize a Trident representative to meet with Fleet without any representatives of the Debtors present, (ii) provide Fleet with a mortgage on the Ashton Road Property, and (iii) execute a formal retention agreement with Trident. (Complaint, ¶¶33-34). On June 3, 2003, the Debtors and Trident entered into a formal retention agreement. (Complaint, ¶39). However, Trident never produced a business plan, analysis or any similar written documents for the Debtors. (*Id.*). On June 3, 2003, the Debtors also granted a mortgage on the Ashton Road Property to Fleet. (Complaint, ¶40).

On August 27, 2003, Fleet assigned the loans to SummitBridge. (Complaint, ¶44). The Debtors learned of the assignment when they contacted Fleet in September 2003 to discuss an extension of the forbearance agreement. (Complaint, ¶45). Two days after the expiration of the forbearance agreement, SummitBridge transmitted letters to the Debtors demanding repayment. (Complaint, ¶46). SummitBridge discharged Trident in September 2003 and subsequently

3

refused to work with the Debtors or extend the forbearance agreements. (Complaint, ¶47).

The Debtors paid Trident in excess of $200,000 for minimal work. (Complaint, ¶48). Trident was, in effect, Fleet's agent for the purpose of controlling and managing the operations of the Debtors for the benefit of Fleet. (*Id.*).

<u>Standard - Motion to Dismiss under Fed.R.Civ.P. 12(b)(6).</u>

Fed.R.Civ.P. 12(b)(6), made applicable here by Fed.R.Bankr.P. 7012(b), governs a motion to dismiss for failing to state a claim upon which relief can be granted. In considering a Rule 12(b)(6) motion to dismiss, the court "must accept as true all allegations in the complaint, and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Philadelphia,* 868 F.2d 644, 645 (3rd Cir. 1989). *See In re Spree.com Corp. v. Tesler,* 2001 WL 1518242, at *2 (E.D. Pa. Nov. 2, 2001). "The complaint will be deemed to have alleged sufficient facts if it adequately put the defendants on notice of the essential elements of the plaintiffs' cause of action." *Higgins v. Beyer,* 293 F.3d 683, 688 (3d Cir. 2002), citing *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996).

A complaint should be dismissed only if the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." *Conley v. Gibson,* 355 U.S. 41, 45 (1957); *Spree.com,* 2001 WL 1518242, at *2. The relevant record under consideration consists of the complaint and any "document integral or explicitly relied on in the Complaint." *U.S. Express Lines, Ltd. v. Higgins,* 281 F.3d 383, 388 (3d Cir. 2002), citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir. 1997).

Discussion.

Trident first argues that all three claims filed against it should be dismissed based upon a "hold harmless" clause that appears in the retention agreement between the Debtor and Trident. The clause states:

> In the event that [Trident] principals or personnel function as CRO [Chief Restructuring Officer] or in any other form of management capacity, with either direct or indirect or implied authority to do so, it is understood and agreed that [Trident] will be held harmless by the Company, its management, and shareholders for the results of such management activity unless such activity had a material adverse impact on the Company and was the result of unmitigated gross negligence on the part of [Trident].

*See* Trident Mem. of Law, Ex. A. Pennsylvania law recognizes the validity of exculpatory clauses when three conditions are met: (i) the clause must not contravene public policy, (ii) the contract must be between persons relating entirely to their own private affairs, and (iii) each party must be a free bargaining agent to the agreement so that the contract is not one of adhesion. *Topp Copy Products, Inc. v. Singletary,* 533 Pa. 468, 471, 626 A.2d 98, 99 (1993). Once an exculpatory clause is determined to be valid, it may be unenforceable unless the parties' language is clear that a person is being relieved of liability for his own acts of negligence. *Id.* In interpreting exculpatory clauses, courts will be guided by the following standards:

(1) the contract language must be construed strictly, since exculpatory language is not favored by the law;
(2) the contract must state the intention of the parties with the greatest particularity, beyond doubt by express stipulation, and no inference from words of general import can establish the intent of the parties;
(3) the language of the contract must be construed, in cases of ambiguity, against the party seeking immunity from liability; and
(4) the burden of establishing the immunity is upon the party invoking protection under the clause.

*Id.* Applying these standards to the present matter, I conclude that this hold harmless clause does

5

not support dismissal of Counts V, IX, and X.

First, the hold harmless clause does not protect a party from fraudulent transfer claims made pursuant to Bankruptcy Code §§548 and 550. The fraudulent transfer claims arise from payments made by the Debtor to Trident, not from Trident's conduct or activities as a CRO.

Second, the hold harmless clause includes an exception for Trident's "gross negligence" that causes a "material adverse impact" on the Debtor. Upon review of the Plaintiffs' factual allegations, and inferences arising therefrom, I conclude that the Plaintiffs sufficiently allege that Trident's conduct as CRO caused a materially adverse impact on the Debtor and arose from Trident's grossly negligent misconduct.[5] *City of Pittsburgh v. West Penn Power Co.,* 147 F.3d 256, 262 (3d Cir. 1998)(In construing a complaint on a motion to dismiss, a court is obligated to examine the complaint "as a whole and to base rulings not upon the presence of mere words but, rather, upon the presence of a factual situation which is or is not justiciable.")

Trident also argues that the Plaintiff's claim asserted in Count X (professional negligence) must be dismissed under the economic loss and the gist of the action doctrines. The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract." *Duquesne Light Co. v. Westinghouse Elec. Corp.*, 66 F.3d 604, 618 (3d Cir. 1995). Similarly, Pennsylvania's "gist of the action" doctrine has been described as follows:

> The gist of the action doctrine's purpose is to maintain the distinction between the theories of breach of contract and tort, and it precludes a plaintiff from recasting ordinary breach of contract claims into tort claims....When a plaintiff alleges that the defendant

---

[5] The complaint alleges that Trident did not act in good faith or with the level of loyalty expected from a financial consultant. These allegations, combined with others in the Complaint, sufficiently set forth a claim for gross negligence. *See United Artists Theatre Co v. Walton,* 315 F.3d 217, 233 (3d Cir. 2003).

6

committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort; a tort claim is maintainable only if the contract is 'collateral' to conduct that is primarily tortious.

*Air Products and Chemicals, Inc. v. Eaton Metal Products Co.,* 256 F.Supp.2d 329, 340 (E.D.Pa. 2003)(citations omitted).[6] The *Air Products* Court also wrote: "the gist of the action is contractual where 'the parties' obligations are defined by the terms of contracts, and not by the larger social policies embodied by the law of torts.'" *Id.* at 341 *quoting Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79,104 (3d Cir. 2001).

The Plaintiffs argue that the economic loss and gist of the action doctrines do not apply to negligence claims against professionals. In the *Rapidigm, Inc. v. ATM Management Services, LLC* decision, the Allegheny Court of Common Pleas recognized that:

> Under settled Pennsylvania case law, a client may bring both a contract action and a tort action against a professional based on allegations that he or she failed to provide the client with professional services consistent with those expected of the profession.

*Rapidigm, Inc. v. ATM Management Services, LLC*, 2003 WL 23146480, 63 Pa.D.&C.4th 234, (C.C.P. Allegheny County 2003). *See also Lawrence Lichtenstein v. Stockton Bates, LLP (In re Computer Personalties Systems, Inc.),* 2003 WL 22844863, *4-*5 (Bankr.E.D.Pa. Nov. 18, 2003)(concluding that a bankruptcy trustee could pursue both breach of contract and negligence claims against an accountant because, under Pennsylvania law, failure to comply with standards such as the Generally Accepted Accounting Principles (GAAP) breaches a duty that arises apart from the contract claims.) The *Rapidigm* Court further noted that:

> The apparent purpose of professional negligence actions is to provide protection to those

---

[6]Although the Pennsylvania Supreme Court has not adopted the gist of the action doctrine, the Pennsylvania Superior Court and some federal district courts have predicted that it would. *Air Products,* 256 F.Supp.2d at 340.

7

> service providers who are not likely to be guaranteeing the outcome of their services.
> Ordinarily, the lawyer, the physician, and the accountant are not guaranteeing a result
> that can be described in a contract. Instead, they are agreeing to exercise skill and
> knowledge normally possessed by members of the profession in an effort to achieve goals
> for the clients that cannot be guaranteed.
> ....
> Contract law provides sufficient protection to customers/clients of service providers
> whose services are capable of being evaluated through the guarantee of a defined
> outcome.

*Rapidigm*, 63 Pa.D.&C.4th at 243-44. The *Rapidigm* Court reviewed decisions in other states and ultimately determined that a computer consultant was not a "professional" and dismissed the fraud, misrepresentation and professional negligence claims brought against the computer consultant in that case. *Id.* at 249.

While the parties' research and my own research have not uncovered any cases directly addressing the issue of whether the economic loss or gist of the action doctrines prevent tort claims against restructuring consultants such as Trident, other decisions have recognized that malpractice claims can be asserted against financial consultants (*see In re Merry-Go-Round Enterprises, Inc.,* 244 B.R. 327 (Bankr.D.Md. 2000)) and have approved retention agreements in bankruptcy cases for financial consultants that include indemnification provisions protecting those consultants from malpractice actions. *See United Artists Theatre Co. v. Walton,* 315 F.3d 217 (3d Cir. 2003); *In re Joan and David Halpern, Inc.,* 248 B.R. 43 (Bankr.S.D.N.Y. 2000). These decisions recognize that financial consultants are hired as professionals in bankruptcy cases pursuant to Bankruptcy Code §327 and may be subject to malpractice actions. Assuming, without deciding, the possible application of the economic loss and gist of the action doctrines, the factual record must be more fully developed to determine whether Trident, acting as a Chief Restructuring Officer for the Debtors, should be subject to the same standard of care as the

financial consultants in the foregoing cases and, therefore, is also subject to a professional negligence or malpractice claim.

Viewing the allegations and inferences therefrom in the light most favorable to the Plaintiffs, I conclude that the Plaintiffs may allege a professional negligence claim against Trident.

An appropriate order follows.

BY THE COURT:


KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **A.S.K. PLASTICS, INC., et al.,** | : | |
| | : | |
| Debtors. | : | **Bankruptcy No. 03-34574 KJC** |
| | : | **(Jointly Administered)** |
| | : | |
| | : | |
| **A.S.K. PLASTICS, INC., JAMISON PLASTIC CORP; 9800 ASHTON ROAD, L.P.; THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | |
| | : | |
| **SUMMITBRIDGE NATIONAL INVESTMENTS LLC; TRIDENT CONSULTING GROUP** | : | |
| | : | |
| Defendants | : | **Adversary No. 04-511 KJC** |

## **ORDER**

**AND NOW**, this 13th day of May, 2005, upon consideration of the Motion to Dismiss Case filed by defendant Trident Consulting Group (docket no. 14) ("Trident's Dismissal Motion"), the plaintiffs' opposition thereto, and after oral argument, and for the reasons given in the foregoing Memorandum, it is hereby **ORDERED** that Trident's Dismissal Motion is hereby **DENIED**;

**AND**, a pre-trial conference will be held on **June 9, 2005 at 10:30 a.m.** in Bankruptcy Courtroom No. 1, Robert N.C. Nix Federal Building & Courthouse, 900 Market Street, 2nd Floor, Philadelphia, Pennsylvania.

BY THE COURT:


KEVIN J. CAREY
UNITED STATES BANKRUPTCY JUDGE

Copies to:

Allison M. Berger, Esquire
Samuel H. Israel, Esquire
Fox Rothschild, LLP
2000 Market Street - 10th Floor
Philadelphia, PA 19103-3291

Leon R. Barson, Esquire
Gary Bressler, Esquire
Adelman Lavine Gold & Levin, P.C.
Four Penn Center, Suite 900
Philadelphia, PA 19103

Peter S. Clark, Esquire
Derek J. Baker, Esquire
Andrew J. Soven, Esquire
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301

Rudolph J. DiMassa, Esquire
Patrick J. Loftus, Esquire
James H. Steigerwald, Esquire
Duane Morris LLP
One Liberty Place
Philadelphia, PA 19103-7396

Frederic J. Baker, Sr., Esquire
Senior Assistant United States Trustee
833 Chestnut Street, Suite 500
Philadelphia, PA 19107

Walter C. Stoertz, Jr., Acting Clerk, U. S. Bankruptcy Court
Pamela Blalock, Courtroom Deputy Clerk